In reading the marriage of Hendel on behalf of the appellant, Mr. Andrew Johnson, and I apologize, counsel, I miss your name as far as, thank you. Good morning, your honors. May it please this court. I'm Randy Johnson. I represent Victoria Hendel in this appeal. There are three primary facets to this case. These issues, these three primary facets do not stand in isolation to one another. They are woven together, ultimately, but wrongfully, creating a legal web from which my client was not allowed to escape. The initial triggering event here, your honor, was the September 12, 2012 order in the hearing in which the trial court allowed my client's former counsel to withdraw and proceeded to immediately violate my client's rights under Illinois Supreme Court rules. By setting a trial in December? Pardon me, your honor? By setting another trial date? Yes. Set a firm and final trial date immediately, amongst other matters in that order, which not only set the firm or the final trial date when my client wasn't present and was unrepresented by counsel. Because just a few lines earlier, just a few moments before that, counsel had withdrawn. Absolutely. And then withdrew the petition for fees. Pardon me? And also withdrew the petition for fees at that time. Yes. At the same time. Yes. Counsel was granted leave to withdraw in that September 12 order. And it said, given leave to withdraw, withdraws immediately. And subsequent to that point in the order, final trial dates were reset. My client's motion to compel and to continue trial was withdrawn, but we don't know by whom. It was granted, though, wasn't it? Pardon me? The trial, the October date was stricken, wasn't it? Well, it was stricken, sure. But we don't know who withdrew my client's motion to compel regarding discovery. We don't know how my client's petition for interim attorney's fees and costs were withdrawn. Well, when you say we don't know how, did you seek to obtain some sort of record or bystander's report from counsel, from former counsel? What we have, Your Honor, is only the order. I understand that, but did you seek to obtain a bystander's report or an affidavit or some sort of information that would supplement the record to indicate what really occurred? Your Honor, I did not. Well, then whose obligation is that to fill in those blanks? Respectfully, Your Honor, after that attorney was allowed to withdraw, she had no further involvement in this case. No, the point is on appeal, whose obligation is it to provide a full and complete record? The appellant, of course, Your Honor. So should we not take any absences in the record against you and your client? I believe that that would be appropriate, but I believe that this record is sufficient to tell the court exactly what happened here. The order is the order. Counsel, at the top of that order, on September 12th, was allowed to withdraw immediately. My client wasn't present. The court had to take testimony that my client even had notice of this. And again, I'm referring to the September 12th, 2012 order. My client was granted 21 days to file an appearance. And immediately after that language, there are... He reconsidered the petition for fees. It's true. However, Your Honor, respectfully, my client was prejudiced the moment this September 12th order was entered because it set a trial date within 90 days. Now, if we put ourselves in the position of a lawyer out there looking at this, who... Remember, on September 12th, my client's former lawyer, Ms. Bunkala, couldn't get an interim fee petition under 501. She couldn't receive fees under 501 as of September 12th. The court allowed her to withdraw. So a new lawyer would be looking at this saying, well, gee, the former lawyer couldn't get the trial court to award fees. I've got 90 days to prepare for a serious divorce case. At the point of September 12th, the issue of custody was still at issue. The question of custody of the only minor child wasn't really worked out until Mr. Heindel conceded custody to my client the day of trial on December 20th. No attorney, real attorney, in their right mind would get involved in a case like that and win a prayer that, one, they may get paid. Certainly under Supreme Court Rule 13, if an attorney walked in and filed his or her appearance and said, say, I want interim fees, I'm faced with a firm and final trial date, the court... If this happened or if that happened, if an attorney had come in with a petition for fees and made a reasonable argument that the firm and final trial date should be continued to allow me to adequately prepare, how do we know the judge would not have granted that? That, Your Honor, respectfully, you're correct. That is just as speculative as perhaps my argument is accused of. But the real problem came on that September 12th date when that order was entered and her rights setting up all these different issues after she no longer had a lawyer occurred. That set the tone here. Now, any lawyer worth their salt knows that under Supreme Court Rule 13C, had they not been prepared, excuse me, 13, Supreme Court Rule 13C-3, had the attorney come in and asked for fees, the trial court could have said, no, we're not going to give you interim fees. And by the same token, we have a firm trial date here. You knew this when you got in the case, counsel, and I'm not going to let you out because... But again, isn't that all speculation? I mean, you're putting words in the trial court's mouth. We don't know what the trial court would have done. Your Honor, I know this. I know that my client presented a request for temporary 501 fees, which the Supreme Court, under the early one case, in footnote 2, says, be very liberal with this. Be very liberal. That's what the Supreme Court says in footnote 2. That was an attorney making a petition for fees in early one.  I understand, Your Honor. But the policy considerations at stake in early one are the same policy considerations at stake here, whether or not a person is going to be able to secure legal counsel. The policy considerations are exactly the same. And when the Supreme Court was reviewing how to operate under section 501 of the statute, the Supreme Court was very clear in footnote 2, this is a temporary order. Does the... Well, in this particular case, were there earlier fees that were paid, interim fees? The last interim fee payment... Fee was required to... ...was under an agreed order, not by adjudication, but under an agreed order. I believe it was after July 3rd. Ms. Brincal had filed another request for fees. And it was withdrawn? It was withdrawn under this order. It was denied, is my point. It was withdrawn. It says under the order it was withdrawn. It wasn't just the issue of interim fees that caused counsel to withdraw. She also had some disagreements with her client, correct? I don't believe that there was any actual voiced disagreement. There was an allegation in the motion. I think that the motion was somewhat conclusive, Your Honor, as they often are. But... You're not saying it was a boilerplate motion and they just threw that language in, are you? Pardon me, sir? That there were some disagreements about how to proceed? I don't believe so. I don't believe so. Well, there's probably always disagreements about how to proceed, in a lot of cases. Counsel was even asking for fees in the event she was allowed to withdraw, to take care of some accounting issues with an expert. That certainly doesn't portend a situation with detention between the client and the attorney. And, yes, it was withdrawn under the order of September 12th. But my client wasn't there, and at the time of the withdrawal portion of the disorder, she was unrepresented. Do we know why she wasn't there? Does the record reflect why she didn't appear that day? No. No. And what's even more puzzling, it's even more puzzling, is immediately after Attorney Bruncala is allowed to withdraw, at page 950 of the record, the court will find an order, September 12th, 2012, setting a firm and final trial date, listing Ms. Bruncala as my client's lawyer. That's a legal impossibility, based upon the prior order. It's a legal impossibility she was unrepresented. And Supreme Court Rule 501, excuse me, Statutory Section 501, as discussed by the Illinois Supreme Court in the Early Wine case, in footnote 2, tells us exactly what it is. It's a temporary order. The Supreme Court says, be liberal with this, trial judges. You can do, you can, you can take care of these issues at the time of trial or in your decision. But be liberal with awarding fees. Now, my client was in Catch-22. My opponent says, well, you had to go hire a lawyer with no money to come in and ask for fees under 501. I don't believe the legislature set that up as a policy. Where would be the basis for a trial court to award fees to a pro se litigant on the if-come that maybe an attorney will come in? I think, I think, Your Honor, that based upon footnote 2 of the Supreme Court's decision in Early Wine, the court can conditionally say, I will award fees. I want a lawyer in here because if anyone's going to be paying those fees, it has to be a lawyer. Isn't that in effect what the trial court did when it said, you know, I will reconsider these disorder? Respectfully, I don't think so. My client was a layperson. She was unrepresented at that point. She presented a request for temporary fees at least nine times. And every single time, it was either pushed off call, continued, or denied, or allegedly, when no one was standing there representing my client back in September 12th of 2012, withdrawn. Quickly, can you tell us what was the ultimately, what was the prejudice to your client in the outcome of the case? Your Honor, some might think that what ultimately occurred might be fair, but I don't believe it was fair. She made a claim, Your Honor, on October 29th. Unfortunately, it came within a pro se fee petition at page 1033 of the common law record. She claimed that her husband wasn't paying the mortgage for the marital home. Now, in the response that Mr. Heingold filed on November 21st at page 1059 of the common law record, he admits that his gross salary is in excess of $14,000 a month, $14,343.51 a month in paragraph three. And in the next paragraph on page 1060 of the common law record, he admits that he's not paying the mortgage. So, my client potentially had a very serious claim. Counsel, not potentially. The question I think that Justice Burkett asked you is where is the prejudice to your client? Not potential prejudice, but where's the prejudice? She's prejudiced because she wasn't able to present, first of all, a claim for dissipation for his failure to pay the mortgage. And that on the day of trial, with all due respect, denying of this continuance, she's prejudiced in being treated properly. There's no right to counsel in a divorce case.  Under In Re Marriage of Fahey, it was an early case in the 1990s. It was decided by Justice Freeman. I respectfully provide the court where Justice Freeman quoted a case saying that there is a due process right to counsel, even in the civil arena, in a marriage case. That case has never been overruled or changed. That's still the law. So, within the framework that we have, and 501 is that framework, my client's right to due process was deprived under Fahey because she had to try this case alone. Unfortunately, just a couple of days earlier, suffering from very serious surgery. Thank you. I'll give you a chance for reply. Good morning. May I please the court? Counsel. My name is Kylie Witte and I represent the appellee, Keith Heindel, in this matter. Victoria asks this court to believe that she suffered a great injustice at the hands of the trial court when, in fact, the outcomes of which Victoria complains were simply the result of her continued unwillingness to accept the rulings of the trial court time and time again, which were under consistent with the laws of this state. In addition, the ultimate judgment entered here, as your honors brought up, was incredibly equitable, such that Victoria has not raised a single issue with the ultimate ruling, simply because there's no reason to do so where she suffered no prejudice in the ultimate judgment entered. I'd like to begin where my opponent... Wasn't the trial court... On the day of trial, she was pro se and she had just undergone surgery. That was the allegation made by Victoria to the trial court. Was that disputed? Is that... There was no evidence in support of those allegations. What she simply did was make those allegations in a motion to continue. There were no affidavits attached. There were no doctor's notes submitted into evidence to the trial court. And the trial court... Did she indicate where the procedure had been performed? She did not. And, in fact, your honor, the trial court, who was in a superior position to hear her testimony, review her motion and hear her arguments, found that that issue was not even the substantial reason that she was seeking a continuance. Really, she was seeking a continuance because, as she even stated in her motion, she wasn't prepared, she didn't believe she knew the law, and she wanted time to get an attorney. And, in fact, she specifically added in her motion that she wanted the motion to continue until the fee issue could be resolved. And it was, in fact, resolved on the same day that the motion to continue was heard. And so I believe where the standard there is an abuse of discretion, a lot of leeway should be given to the trial court who heard her testimony and was able to determine her credibility and then thereafter was able to see that, in fact, she was able to perform well at trial. She was able to advance her arguments. And the motions in and of themselves, which were quite detailed and of which she filed several, I believe five during the time she was representing herself, were very detailed. Cited case law, all of those things demonstrated to the trial court that she was able to proceed, that she was competent to proceed. I would like to touch on my opponent's arguments with respect to the issue of prejudice here. A counsel argued that the issue of prejudice was that Victoria didn't have an opportunity to argue a claim with respect to dissipation as it relates to the failure to pay the mortgage. In this case, there is no prejudice as to that issue. My client was awarded the marital residence. My client was solely responsible for the mortgage. He was solely responsible for any deficiency which resulted from any foreclosure on the mortgage. So in this case, Victoria didn't suffer any prejudice because any responsibility for his failure to pay the mortgage was assessed to him. And while counsel points out that my client was earning $14,000 per month, while he admitted that that's his gross salary, Victoria was receiving nearly 50% of his net salary each month. And in addition there too, the trial court then awarded her 35% of his annual bonus as and for maintenance. In this case, not only did she receive 50% of the marital estate except for the dissipation claim that was found against her, she received over $48,000 in maintenance and child support in 2013. And from that year forward, she's to receive $45,500 per year plus 35% of my client's bonus. I think that's certainly an equitable result in this case based on his net income and her needs as she set forth at trial. With respect to the due process violation, first of all I think it's important that this court consider the fact that Victoria never raised this issue at the trial court level. She filed a motion for a new trial that raised over 11 different issues where she believed the trial court erred. She did not raise that issue at that point in time, nor did she ever file a motion to vacate the September 12th order, nor did she file a motion to continue until December 18th, two days before trial was to proceed. And it was heard on December 20th, the first day of trial. So based on that, I believe that she waived her right to claim that there was a due process violation or at a minimum that she forfeited that right. And the Illinois Supreme Court has held in Gallagher v. Leonard that forfeiture doesn't require a knowing relinquishment, but simply the failure to make that right known and the timely assertion of that right at the trial court level. Still, even if this court were to consider the due process violations, the trial court complied with Supreme Court Rule 13. The trial court struck existing trial dates, which it could have maintained, mind you, based on the fact that they were set to proceed on the 21st day after her counsel was granted leave to withdraw. However, based on the fact that there had been pending a motion to continue, the trial court struck those dates and set the case for 99 days out in the future. And during the 21 days after her counsel was allowed an opportunity to withdraw, nothing happened in the case. There was not a single order entered or a motion heard, and nothing took place. While counsel argues that Victoria was prejudiced, again, having a pro se litigant proceed to trial by herself is not in and of itself prejudicial. Litigants have to represent themselves in hearings and trials all the time. And what we have to look for here is whether there was prejudice at the end of this trial, which we believe there was not. Counsel also pointed out that there was no breakdown here, that he doesn't believe that was the case. Well, as Justice Burkett pointed out, the motion specifically said that there was a breakdown in communication and a failure to be paid. I don't think that we can simply dismiss that to say, of course there was no breakdown here. Victoria demonstrated that she had an inability to work with her three prior attorneys in this matter, at least two of which alleged a breakdown in communication when they sought to withdraw in this manner. So the fact that she was representing herself at trial was not as a result of the trial court September 12th order, but was a result of Victoria's inability to work with someone to proceed to this case on her behalf. Similarly, as Justice Jorgensen pointed out, the trial court did not say that she could not receive interim attorney's fees on September 12th. That motion was withdrawn and not denied. And that motion was withdrawn because the statutory construction of 501c1 required that it be withdrawn, because at the time her attorney withdrew, therefore there was no current counsel to whom fees could be awarded. It's of the utmost importance that we look at that definition, because a careful reading of the statute says that interim attorney's fees are defined as attorneys' fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel. That statute was enacted in 1977 and has never been revised. If there was any kind of a question about that, certainly it would have been revised. While counsel looks to Earlywine and tells this court that the policy consideration should override the statutory construction, there's not any case law to support that. There's not a single case that's been cited here where a pro se litigant has been entitled to interim attorney's fees under 501c1. And that's because it is not the place of the trial court or the appellate court or even the Supreme Court of this state to afford Victoria or any other pro se litigant a right that is not conferred to her by statute. While it's true that Earlywine requires the court to level the playing field and take broad liberal construction of awarding those fees, Earlywine represents the standard for what a court should do when there is before the court a proper petition for interim attorney's fees. And Earlywine and every other case cited, it was the petitioning party's counsel who filed the motion and the petitioning party's counsel to whom fees were awarded. Well, my opponent indicated that there were nine different petitions for fees on which Victoria never received fees on and they were denied or withdrawn. That's simply not true. As he even admitted, on June 5th, my client was ordered to pay $5,000 to Ms. Brancala, and that was paid between June 5th and July 12th. While $5,000 may not seem like a lot, Ms. Brancala was charging $125 per hour at the time. That awarded her fees for 40 hours of work, which she admitted in her petition at the time, would be sufficient for her to prepare for trial. Therefore, that was a very significant award, and he had paid her interim attorney's fees on several occasions prior in the case. It's also important to point out that Earlywine says, we want the court to award fees so that the litigant can adequately participate in the litigation. Victoria did adequately participate in the litigation. The record is replete with references by the trial court finding that she offered cross-examination. She was able to testify twice. She made arguments, both in opening arguments and closing arguments. She was able to discuss evidence that was entered in the case. She had the opportunity to participate in this litigation. As I mentioned earlier, she filed very detailed, very succinct motions with law cited in them on several occasions, and therefore she had the opportunity to participate in this case. And it's our position that even if the court were to consider an interim fee petition, Victoria would not have been entitled to interim fees at that point in time, and the court would have had to consider the fact that she filed no affidavit in support of her motion. All of the cases cited by my opponent include circumstances where the petitioning party submitted 154 pages of documentation, for example. Victoria did not sign a single affidavit in response or in support of her petition, nor was she able to indicate that she was unable to pay the fees. She was receiving maintenance from my client and nearly 50% of his monthly net income. And above and beyond that, she had failed to cash many of the checks that he tendered to her, showing that she didn't need the money. So when counsel says that she had no money with which to hire counsel, that's simply not true. She was receiving maintenance, and she had received $5,000 from my client in interim fees. She had received a $6,400 tax refund in May of 2012, for which she never accounted. And so she did have cash available to her. She simply chose not to use it. So while she continued coming back into court asking for my client to pay for the fees to hire counsel for her, she simply chose not to use the funds at hand for herself to retain counsel at that point in time. And I would like to address, with respect to the third point and the denial of the motion to continue, this motion to continue was filed on the eve of trial on December 18th. At no point between September 12th or December 18th was a motion to continue filed. Do you mean September 12th? September 12th, 2012, excuse me, and December 18th, 2012. There was not a motion to continue filed. There was not a motion to vacate the trial order filed. And she did, in fact, come in and advise the trial court that she believed she had a surgical procedure scheduled. However, she didn't file a motion to continue at that time.  This case is akin to the Drowage case out of the First District, where that litigant, time and time again, disregarded the orders of the court, did not want the case to proceed, and had many opportunities to hire counsel and simply sent people in to say, I don't want this case to go to trial. And the trial court found she'd had her opportunities and properly denied the motion to continue, which was filed, in fact, in that case, six days before trial was to proceed. In this case, her motion to continue was heard the afternoon that trial was to commence. There was nothing in her motion that indicated that this was a sudden onset illness or procedure. And there was no evidence in support of her motion, including even an affidavit. Where this case was set for trial three different times, and where Supreme Court Rule 922 required that a custody judgment, a custody issue be decided within 18 months, and 28 months had passed, the trial court certainly did not abuse its discretion in determining that this case must go forward. This case must be decided, and there would not be a sufficient basis for a delay. The court is, the rules of the court are clear, and this court held in In Re, the Marriage of Chess, wrote that the continuance must be sought for a seriously grave reason. And in this case, no seriously grave reason existed for a continuance. While counsel seeks to pull at the heartstrings of this court by including in her brief issues related to the breast surgery, we have no idea what that was related to. We have no evidence of that, and the trial court was able to make the determination, and this court can as well, based on the record, find that that was not ultimately the basis for her request for a continuance. She simply did not want the case to go forward. She wanted my client to pay for an attorney, and she refused to accept the fact that the trial court had denied those requests on several occasions prior thereto and wanted to make yet another last-ditch effort to make sure that the trial court awarded her that opportunity. Based on the fact that Victoria was awarded a fair and equitable portion of the marital estate, based on the fact that counsel has not met his burden in proving that she suffered any prejudice in the ultimate outcome of this case, I don't believe that this court should overturn the judgment of the trial court, which was entered not by way of an abuse of discretion, but after witnessing the ability of the appellant to proceed with trial, witnessing the credibility of her allegations, reviewing the supporting documents, and hearing all of the testimony there, and witnessing her demeanor in each of those instances. And based on that, your honors, I don't believe that the question of prejudice has been resolved or even can be resolved. And it's important that we look at the standard of review here being the abuse of discretion. And I don't believe that we can find that no reasonable person would have denied interim attorney's fees where the statute is so clearly written as to not allow attorney's fees to pro se litigants, and where the motion to continue was filed on the eve of trial and does not come close to any of the other circumstances. And finally, with respect to the due process issue, where the trial court awarded Victoria many opportunities for continuances, to retain new counsel, to make her arguments, never struck her motions simply on a procedural basis, though Keith filed motions time and time again to strike and dismiss for failure to comply with rules, it heard the merits of her concerns each and every time and afforded her a full opportunity to litigate. And based on that, she was not denied her due process. None of the cases that were cited with respect to due process violations in Supreme Court Rule 13 come close to the circumstances here. In each of those cases, the appellate courts found that there was error because the litigant was forced to go to trial one day later, 10 days later, and stamped her after a withdrawal. In this case, the trial dates were stricken and the case was continued for 99 days. And during those 99 days, Victoria had the utmost opportunity to seek counsel if she so chose and to file a future fee petition, as Justice Burkett pointed out. The trial court was willing and ready to hear that on an emergency basis, yet she did not hire counsel and therefore she was not entitled to fees under 501c1. And if the public policy requires that there be an opportunity for a pro se litigant to get prospective attorney's fees, then I believe that's for the legislature to make an amendment to the current rules. I have one question. Yes. Counsel suggested that there was prejudice in that the motion to compel discovery was withdrawn or stricken on 9-12. Do you have a response to that? With respect to that issue, there was not a discovery cutoff date. So Victoria was free at any point within those 99 days to file a motion to compel, and she chose not to do so. She chose, in your position, she chose not to bring that motion again. Exactly. She brought many other motions and certainly was aware of her ability to proceed with motion practice, and she chose not to bring that motion before the court. And that was in the order? The court's order that she could renew her motion? The order did not specify that she could renew her motion. However, it was withdrawn, and nothing indicated that it was withdrawn with prejudice. So pursuant to the Supreme Court rules, she had the right to bring that motion at any point in time and was not restricted from doing so. Anything else? Your Honor, it's at record at the bystander's report that was approved by the court, page 22. It talks about my client telling the trial judge, the previous trial judge, on November 26th that she was scheduled for breast surgery just a couple days before the trial date. After hearing that, and in accordance with the bystander's report, the trial judge apparently didn't care. The court entered an order on November 26th saying those trial dates are firm and final. Now, for her to come in again after previously telling the prior judge, I'm going to have breast surgery, I mean, that was 20-some days before the firm and final trial date. When was she supposed to file an actual motion to continue? The only opportunity she had to do it was on the day of trial. She obviously asked for it on November 26th, but that didn't phase the trial judge. Where is the bystander's report in this? The bystander's report, Your Honor, was approved by the trial judge. I'm asking, is that in your appendix? Is it in the appendix? It's in the record at B-22, supplemental record, Your Honor, page B-22, supplemental record. And as far as, the Miller case says that no one is to be prejudiced within those first 21 days. That's the law in remarriage of Miller in the third district. What's the prejudice again? Are you saying because a trial date was set in December, that was the prejudice? I'm saying that was prejudiced because it was a final date with her not even being there and not being represented by counsel. I'm saying that the withdrawal of all these motions that were pending with my client not being there, not being represented, no one taking a waiver from her, that prejudiced her. You're going back to the date of withdrawal. She was not there. She had notice of the motion to withdraw. She was not there. I understand, Your Honor. But she certainly didn't exercise any independent discretion to ask the court to... She exercised discretion in not showing up. She didn't really know what was happening because... The order reflects that she was provided notice of the motion to withdraw. That's true. And not only was there a motion to withdraw pending, but her former counsel had found all kinds of motions that were pending that day.  None at all. Did she honestly think that counsel was going to go forward with all these motions and then seek to withdraw? They were her motions. They weren't counsel's motions. They were the witney's motions. Your position is they were her motions, not her attorney's motions. As far as all these things that were withdrawn. But then she chose not to be there, not to go forward with her motions. Isn't that a normal course of things? When someone puts a case on the call for a particular motion, they don't appear. The motion is stricken or withdrawn, or shown as withdrawn. First of all, given the fact that nothing is supposed to prejudice her within those 21 days, I don't think that any of those things should have occurred. 501, a division of assets under 501 in order to pay fees, come from marital property anyway. And as far as the prejudice, as far as the mortgage issue, well, had Mr. Heine been paying the mortgage, maybe there would have been more of a marital estate to divide here. Counsel's argument about that he had sole responsibility for the mortgage, correct? Ultimately, but he got it on the debt side, not the asset side, because he didn't pay the mortgage. He hadn't paid the mortgage. You don't have any quarrel with counsel's argument about the ultimate disposition, that your client did okay in terms of maintenance, etc.? Your Honor, I don't believe so. There certainly was not a 50-50 available division of everything had Mr. Heine been forced to pay the mortgage. But that ultimately never occurred. And counsel says, well, she represented herself. But the public policy of the state is that she shouldn't have to. Well, let me ask you this. You said nine times the petition was denied? Denied, withdrawn. I have it listed on page 24 of my brief, Your Honor. It was presented or addressed to the court a total of nine times. And how many of those times occurred while she was pro se? I believe every single one of them. Right. And every single time she was told that if she hires counsel, the petition might be reconsidered by the court? It certainly was included. I mean, how many times does it take before somebody gets the message? You've got to hire counsel, and counsel can petition the court for fees. Your Honor, I understand. But somebody in that situation who feels that type of emotional pressure, I'm not sure under those situations. Certainly a lawyer would unquestionably. You make a nice emotional argument. You did in your brief as well. It's almost like reading a novel. But your client was not destitute. She had funds, correct? She had funds. She had money. I don't believe that, Your Honor. The evidence. How much was she paid? She had a child with her. She had two children with her. And the evidence indicates, the affidavits that were filed, show she was earning about $600 a month. Mr. Heine was earning, grossing over $14,000 a month. And was she being paid temporary maintenance? For a period of time, yes. How much in the previous year had she been paid in temporary maintenance? Your Honor, I don't want to quote an exact number. I'm not exactly sure. Was it in the neighborhood of about $45,000 or thereabouts? I'd be happy to say that it was in that neighborhood. But by the same token, she wasn't in the marital home. She had to provide housing. She had to provide food. She had to provide everything for her and two children. That money goes fast in that situation. Your Honor, I'm going to respectfully ask that this Court reverse this judgment and remand the case as requested in our prayers for relief. Thank you for your attention to this matter, Your Honor. Thank you. Your Honor, can I have a moment? Sure. For benefit of both counsel, as you notice, one of our chairs is empty. Justice Zinoff is the third member of the panel. She was very unexpectedly called out of town for today. But prior to our deliberations following your oral arguments, she will listen to the tape, which is prepared, of each and every oral argument, and then we will have discussions and a disposition filed forthwith. Thank you.